Moloy K. Good OSB#012636
THE GOOD LAW CLINIC
211 E. 11TH Street, Suite 104
Vancouver, WA  98660
Phone: (360) 608-5346
Fax: (360) 694-7602
moloy@goodlawclinic.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CONSTANCE GEORGE** Plaintiff, v. **HOUSE OF HOPE RECOVERY, BRIDGES TO CHANGE, INC., WASHINGTON COUNTY DEPARTMENT OF HOUSING SERVICES, and PATRICIA BARCROFT,** Defendants. | **NO.** COMPLAINT Federal Fair Housing Act 42 U.S.C. §§ 1981 and 1982 Damages and Injunctive Relief DEMAND FOR JURY TRIAL |

### INTRODUCTION

Plaintiff Constance George is African-American and a Jehovah Witness.  Plaintiff was homeless.  She attended a convention for the homeless and was put in touch with Defendant Bridges to Change, Inc. ("Defendant Bridges").  After discussing her needs with Defendant Bridges she was approved to participate in the Homeless to Work Program that Defendant Bridges managed, and was funded by Defendant Washington County Department of Housing

PAGE 1  – COMPLAINT

Services ("Defendant County"). Nancy Ferry, an employee of Defendant Bridges, arranged for Plaintiff to stay at Defendant House of Hope Recovery ("Defendant House"), a non-profit organization that operates housing for homeless women in recovery. Defendant House is managed and supervised by Defendant Patricia Barcroft ("Defendant Barcroft"). During her stay at Defendant House, Plaintiff was the only African-American woman, and the only Jehovah's Witness. Prior to approving Plaintiff to live at Defendant House, Defendant Barcroft asked Plaintiff questions about her race. Even though she allowed Plaintiff to move in, Defendant Barcroft proceeded to treat Plaintiff differently than the white women who also lived in the house. Defendant House also required that Plaintiff attend two religiously-based recovery meetings each week, and one weekly recovery meeting that was not religiously-based. Plaintiff asked to attend religious meetings that were based in her own faith. Defendant Barcroft told Plaintiff she did not have to attend one of the weekly religious meetings, but had to attend the other religious meeting that was being held that night. Plaintiff later told Autumn Ray, the House Coordinator, that she was sick and could not attend the meeting that evening. Ms. Ray ordered Plaintiff to attend the meeting anyway. In contrast, a few minutes earlier Ms. Ray excused another resident, a white woman, from attending that evening's meeting. Ms. Ray told Defendant Barcroft that Plaintiff had asked to be excused from the meeting because she was sick. Upon hearing that Ms. Barcroft went to the premises and terminated her tenancy. Plaintiff left the premises that night. A couple of weeks later she asked Jimmy Williams, another employee of Defendant Bridges, for relocation to another recovery house. Mr. Williams said that Plaintiff would have to attend non-Jehovah's Witness religious meetings, and that she was not eligible to enter other recovery housing because she had been terminated from Defendant House.

PAGE 2 – COMPLAINT

This is an action for damages and injunctive relief under state and federal fair housing law, and damages under state landlord-tenant law and negligence.

## I. JURISDICTION

1. The action arises under the Fair Housing Act (FHA) 42 U.S.C. § 3601 et seq, and the Civil Rights Act of 1866 42 U.S.C. §§ 1981 and 1982. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. PARTIES

2. Plaintiff is a resident of the State of Oregon. The events described herein took place in Beaverton, Oregon, which is located in Washington County. Plaintiff is African-American and a Jehovah's Witness.

3. Defendant House of Hope Recovery is an Oregon non-profit public benefit corporation, and owns and operates a residential recovery house located at 17915 SW Alexander Street, Beaverton, OR. It has a contractual relationship with Defendant Bridges to provide housing for women in recovery in exchange for monetary compensation.

4. Defendant Bridges to Change, Inc. is an Oregon non-profit public benefit corporation that manages a program called "Homeless to Work" where it mentors and assists clients in finding transitional housing and providing counseling service to integrate the homeless into the workforce. Defendant Bridges receives money from Defendant County to operate this program.

5. Defendant Washington County Department of Housing Services is an agency of

the Washington County government. It has a contractual relationship with Defendant Bridges to administer the Homeless to Work Program. At all relevant times Defendant County operated under color or state law.

6. Defendant Patricia Barcroft is an individual who resides in Oregon, and is, and at all relevant times was, the Director of House of Hope Recovery. She is sued in her official and individual capacity.

7. The acts complained of herein were intentionally and jointly committed.

## III. FACTUAL ALLEGATIONS

8. The premises, commonly referred to as House of Hope (the premises), is a dwelling subject to the federal Fair Housing Act, 42 U.S.C. § 3601 et seq. at all material times Defendants House and Barcroft were in the business of providing housing as defined under the federal Fair Housing Act.

9. In October 2012 Plaintiff was approved to participate in the Homeless to Work Program.

10. Ms. Ferry, an employee of Defendant Bridges, talked with Plaintiff, and disclosed that a "Christ-centered" housing opportunity could come available before other housing. Plaintiff asked Ms. Ferry if "Christ-centered" housing would require her to participate in religious activities, including meetings. Ms. Ferry stated that Plaintiff would not be required to participate in religious meetings.

11. Ms. Ferry learned that there would be an opening at Defendant House and told Plaintiff about this. On or about March 5, 2013, Ms. Ferry took Plaintiff to interview with

Defendant Barcroft, Director Coordinator of Defendant House.

12. During this meeting Defendant Barcroft asked Plaintiff how she felt about "white people," if she attended church, and if she believed in Jesus Christ. She stated that Plaintiff would have to attend two religious meetings, and one non-religious recovery meeting, as a condition of residency. Plaintiff and Ms. Ferry stated that Plaintiff should not be required to attend religious meetings, and Defendant Barcroft agreed. She did state that Plaintiff would be required to attend a "12-step" meeting.

13. Defendant Barcroft agreed to let Plaintiff move in to Defendant House.

14. Defendant House required residents to attend three different meetings each week. Each Sunday residents had to a meeting to discuss Rick Warren's religious text "A Purpose Driven Life." Each Tuesday residents attended a meeting called "Break Free" which was a religious-based "12-step" meeting. Each Friday residents had to attend a non-religious "12-step" meeting.

15. After moving in to Defendant House, Plaintiff discovered that the "Break Free" meeting was religious in nature, and conflicted with Plaintiff's own religious beliefs. Plaintiff complained to Ms. Ferry about this, and Ms. Ferry agreed to speak to Defendant Barcroft about it.

16. On or about March 19, 2013 Plaintiff met with Ms. Ferry, Defendant Barcroft, and Autumn Ray, the House Coordinator for Defendant House. During the meeting Plaintiff asked that she be excused from all religious meetings required by Defendant House. Instead, Plaintiff asked to attend Jehovah's Witness faith meetings.

17.     Defendant Barcroft agreed to excuse Plaintiff from attending the Sunday meeting about "A Purpose Drive Life," but still required her to attend the "Break Free" meetings every Tuesday, including the one that evening.

18.     Later that day, at approximately 4 P.M., Plaintiff contacted Ms. Ray and said she was sick and would not be able to attend that evening's "Break Free" meeting, which started at 5 P.M. and ended at 8 P.M. Ms. Ray ordered Plaintiff to attend anyway.

19.     A few minutes earlier, Ms. Ray had spoken with Plaintiff's roommate, a white woman. The roommate also asked Ms. Ray to be excused from that evening's meeting because she was sick. Ms. Ray excused the roommate from attending, telling her to "stay home and get well."

20.     Around 4:30 P.M. Plaintiff was preparing to attend the "Break Free" meeting when Defendant Barcroft arrived at the premises. Upon arriving, Defendant Barcroft saw Plaintiff in the kitchen, and told her that her tenancy at Defendant House was terminated, and she needed to leave "the sooner the better." Plaintiff called her friend who came and picked her up that evening.

21.     On or about April 2, 2013 Plaintiff spoke with Mr. Williams, another employee of Defendant Bridges, about placement in a new home. Mr. Williams stated that Plaintiff would have to participate in faith-based meetings. He also stated that she was ineligible for any other placements through Defendant Bridges because she had been terminated from Defendant House.

22.     At all relevant times Defendant House had a contract with Plaintiff to provide her housing. At all relevant times Defendant House had contracts with other persons who were white.

PAGE 6   – COMPLAINT

23. Defendant House breached this contract when it terminated Plaintiff's residency at the premises. Defendant House did not terminate any of the contracts it had with its white residents.

24. At all relevant times Defendant Bridges had a contract with Plaintiff to provide her with access to housing. At all relevant times Defendant Bridges had contracts with other persons who were white.

25. Defendant Bridges breached this contract when it terminated Plaintiff from the Homeless to Work Program. Defendant Bridges did not terminate any of the contracts it had with the other persons who were white.

26. Defendant House denied Plaintiff the right to lease and hold real property, a right it did not deny to white citizens.

27. Defendant Bridges denied Plaintiff the right to lease and hold real property, a right it did not deny to white citizens.

28. Defendant House engaged in the conduct described herein by and through its employees and agents, acting in the course and scope of their employment or agency.

29. Defendant Bridges engaged in the conduct described herein by and through its employees, agents, contractors and subcontractors, acting in the course and scope of their employment, agency or contractual obligations.

30. Defendant County engaged in the conduct described herein by and through its employees, agents, contractors and subcontractors, acting in the course and scope of their employment, agency or contractual obligations.

31. Defendant Patricia Barcroft engaged in the conduct described herein in her official and individual capacity.

PAGE 7 – COMPLAINT

32. Defendants' unlawful conduct caused Plaintiff to suffer loss and injury.

33. Defendants had a duty to operate their affairs in a manner free from unlawful discrimination.

34. Defendant House, Defendant Bridges, and Defendant County had a duty to hire, train, supervise and discipline its employees, contractors or subcontractors in a fashion that assures compliance with state and federal laws.

35. Defendant House, Defendant Bridges, and Defendant County were negligent in their hiring, supervision and training of their employees, agents, contractors or subcontractors who were charged with insuring compliance with state and federal laws.

36. Defendant House violated its duty of care as the manager of the premises and as an employer.  Defendant House engaged in willful misconduct.

37. Defendant Bridges violated its duty of care to Plaintiff.  Defendant Bridges engaged in willful misconduct.

38. Defendants' unlawful conduct caused Plaintiff to suffer loss and injury, mental anguish, humiliation, embarrassment, exacerbation of his medical condition, physical harm, insult, indignation, fear, anxiety and nervousness for which they should be compensated at trial.

39. Defendants acted with reckless or callous indifference to Plaintiff's rights under the Fair Housing Act, because the Defendants knew it was illegal to deny Plaintiff a housing opportunity, they knew denying Plaintiff a housing opportunity would damage Plaintiff's health, and they denied Plaintiff a housing opportunity anyway.

///

///

## IV.  CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Against All Defendants**
**(Fair Housing Act – Discrimination based on race and religion)**

As to Defendants House and Barcroft:

40.   By engaging in the discriminatory conduct described above, defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act by:

   a.  terminating Plaintiff's tenancy because of her race;

   b.  terminating Plaintiff's tenancy because she was a Jehovah's Witness;

   c.  by discriminating against her on the basis of her race in the terms and conditions of the rental of the housing by refusing to excuse her from a meeting because she was sick, while excusing a white person from attending the meeting because she was sick; and

   d.  by making statements indicating discrimination based on race.

As to Defendant Bridges and Defendant County

41.   By allowing an agent, contractor or subcontractor to engage in the discriminatory conduct described above, defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act.

42.   By refusing to provide Plaintiff with housing opportunities after she was discriminatorily terminated from the premises, defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act.

**SECOND CLAIM FOR RELIEF**
**Against Defendant House and Defendant Bridges Only**
**(42 U.S.C. § 1981)**

PAGE 9  – COMPLAINT

43.  By engaging in the discriminatory conduct described above, defendants deprived Plaintiff, an African-American, of the same right enjoyed by white persons to make and enforce a contract, specifically a lease for real property. In so doing defendants acted intentionally and maliciously to damage the rights of Plaintiff in violation of 42 U.S.C. § 1981.

### THIRD CLAIM FOR RELIEF
#### Against Defendant House and Defendant Bridges Only
#### (42 U.S.C. § 1982)

44.  By engaging in the discriminatory conduct describe above, defendants deprived Plaintiff, an African-American, of the same right enjoyed by white citizens to lease and hold real property on the basis of her race. In so doing, defendants acted intentionally and maliciously to damage the rights of Plaintiff in violation of 42 U.S.C. § 1982.

### V.  PRAYER FOR RELIEF

WHEREFORE, plaintiff now asks the Court for the following relief:

45.  To restrain, enjoin and order Defendants to immediately allow Plaintiff to use the common area outside of his unit to exercise his dog, so long as he exercises adequate control over her;

46.  To award Plaintiff compensatory and punitive damages from Defendants in amounts to be determined at trial, plus interest from the date of judgment on her Fair Housing claims;

47.  To award Plaintiff compensatory damages from Defendants in amounts to be determined at trial, plus interest from the date of judgment on Section 1981 claim;

48.  To award Plaintiff compensatory damages from Defendants in amounts to be

PAGE 10 – COMPLAINT

determined at trial, plus interest from the date of judgment on her Section 1982 claims;

      49.    To award Plaintiff her costs and attorney fees pursuant to 42 USC § 3613; and

      50.    To grant such other relief as is just and appropriate.

DATED this 10th day of July, 2015.

                      THE GOOD LAW CLINIC

                      s/ Moloy K. Good
                      MOLOY K. GOOD OSB #012636
                      (360) 608-5346
                      Attorney for Plaintiff